Diane PELTIER et al.,
Appellants-Cross-Appellees,

v.

CITY OF FARGO, a Municipal Corporation, et al., Appellees-Cross-Appellants.

Nos. 75–1597 and 75–1598.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 16, 1976.

Decided March 30, 1976.

Robert A. Feder, Fargo, N. D., for Diane Peltier and others.

Wayne O. Solberg, City Atty., Fargo, N. D., for City of Fargo and others; John V. Boulger, Fargo, N. D., on brief.

Before HEANEY, ROSS and WEBSTER, Circuit Judges.

HEANEY, Circuit Judge.

Diane Peltier, Connie Wolter and Sally Suby appeal from an adverse decision in their sex discrimination suit against the Police Department and City of Fargo, North Dakota, for alleged violations of the Equal

Pay Act of 1963, 29 U.S.C. § 206(d)(1), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The appellants assert error in the trial court's denial of their back pay claims under the Equal Pay Act or under Title VII, its denial of sufficient injunctive relief to eliminate the present effects of past and present sex discrimination in the Fargo Police Department under Title VII and its allegedly insufficient award of attorney's fees. The City of Fargo cross appeals and contends that the $2,500 attorney's fees awarded is excessive. We reverse and order back pay, with interest, under the Equal Pay Act and attorney's fees of $5,000.

Male patrol officers serve in numerous law enforcement capacities within the Fargo Police Department. Prior to 1973, several patrol officers were normally assigned to downtown parking control duties which required them primarily to check and ticket for parking and other non-moving violations. In the spring of 1973, the Police Department created a new classification on the City employment list entitled "car marker." This position was designed to provide necessary downtown parking control and to allow the transfer to other positions those officers normally assigned that duty. The three female appellants were hired to fill the car marker positions. Their basic wage rate was approximately one-half the rate of a beginning male patrol officer.

The appellants contend that they perform essentially the same duties as did the male patrol officers who performed downtown parking control duties prior to the creation of the "car marker" position. They contend that the present fifty percent discrepancy in salary is a violation of the Equal Pay Act. They also assert that the male patrol officers who performed car-marking duties were eligible for promotion and transfer as were any other male patrol officer, but that they are not. The appellants assert this restriction of promotion and transfer, coupled with the patrol officer selection process, including unvalidated tests and personal interviews, has resulted in sexual discrimination in violation of Title VII.

The District Court found that the appellants had failed to prove that the job performed by the female car markers was equal in skill, effort and responsibility to that of male patrol officers performing car-marking duties prior to the spring of 1973 and denied their back pay petition under the Equal Pay Act.[1] It further found that a prima facie case of sex discrimination, in violation of Title VII, had been established because no woman had ever been hired as a patrol officer and only three women were employed as police officers in the Fargo Police Department. The court recognized that the appellants were entitled to an equal opportunity to qualify and become patrol officers. However, the appellants admitted that they had never applied for a position as a patrol or police officer and the District Court determined that they had "failed to satisfactorily explain" this failure and denied their claim for back pay under Title VII.

The District Court additionally found that the City and the Police Department: (1) had failed to actively recruit women and minorities for police or patrol officer positions; (2) had advertised for these positions on a sex basis; and (3) had utilized an unvalidated employment test and a height and weight requirement to screen police and patrol officer candidates. The court found the appellees had not offered a satisfactory explanation for these practices which had resulted in discrimination. Therefore, the court, within its equitable power under § 706(g) of Title VII, 42 U.S.C. § 2000e-5(g), ordered the appellees to adopt an affirmative action plan and a validated test and to submit a report to the court for its review.

### I. EQUAL PAY ACT.

The appellants contend that they have and are performing the same duties that the male car markers, classified as patrolmen for pay and promotional purposes, performed prior to June, 1973. They contend

---

1. The District Court's opinion is found at 396 F.Supp. 710 (D.N.D.1975).

that their salary of approximately one-half that given to males is a violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d).

Section 206(d)(1) prohibits an employer from discriminating

> between employees on the basis of sex by paying wages to employees * * * at a rate less than the rate at which he pays wages to employees of the opposite sex * * * for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to * * * (iv) a differential based on any other factor other than sex * * *.

The policy behind the Equal Pay Act was well expressed by the Third Circuit in *Shultz v. Wheaton Glass Company,* 421 F.2d 259, 265 (3rd Cir.), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970), and has been endorsed by this Circuit in *Shultz v. American Can Company—Dixie Products,* 424 F.2d 356, 360 (8th Cir. 1970). The Third Circuit said:

> Congress in prescribing "equal" work did not require that the jobs be identical, but only that they must be substantially equal. Any other interpretation would destroy the remedial purposes of the Act.
>
> The Act was intended as a broad charter of women's rights in the economic field. It sought to overcome the age-old belief in women's inferiority and to eliminate the depressing effects on living standards of reduced wages for female workers and the economic and social consequences which flow from it. [Footnotes omitted.]

*Shultz v. Wheaton Glass Company, supra,* 421 F.2d at 265.

■ The consideration of equal pay standards is based on actual job requirements and performance, not on job classifications or titles. *Hodgson v. Miller Brewing Company,* 457 F.2d 221, 227 (7th Cir. 1972); 29 C.F.R. § 800.121. The Equal Pay Act does

not require that the jobs being compared be performed simultaneously but encompasses situations where an employee of one sex is hired for a particular job to replace an employee of the opposite sex. 29 C.F.R. § 800.114.

The trial court found initially that the male car markers possessed the skills and training of patrol officers while the appellants received training only as car markers. The court found that this additional training gave greater flexibility to the Police Department. The males were capable of performing duties the women were not, and the males could be shifted from the car-marking position to narcotics or other investigative positions. The court concluded that the jobs performed by the men and women car markers did not require equality of skill and were not equal.

■ The crucial question under the Equal Pay Act is not whether one sex possesses additional training or skills, but whether the nature of the duties actually performed require or utilize those additional skills. *See* 29 C.F.R. § 800.126. As stated in 29 C.F.R. § 800.125:

> Possession of a skill not needed to meet requirements of the job cannot be considered in making a determination regarding equality of skill.

Further, to justify unequal wages on the basis of alleged flexibility requires inquiry into the frequency and manner in which that additional flexibility is utilized. *See Shultz v. Wheaton Glass Company, supra,* 421 F.2d at 263–264. We turn, therefore, to the actual duties performed by both the male and female car markers to ascertain whether the additional skills and the alleged flexibility justify the fifty percent discrepancy in wages.

The evidence indicates that the female car makers' principal duties were the daytime patrolling of the downtown Fargo business district marking cars for overtime parking and issuing tickets for parking and non-moving violations.[2] They performed

---

**2.** A person "marking" cars places a chalk mark on the tire of a car parked in a restricted parking zone. After the time period allotted

for parking in that zone expires, the car marker returns and tickets all cars identified by the chalk mark that have exceeded the time limit.

these duties in police uniform, unarmed, while driving Cushman three-wheel scooters. They also performed other related duties, including impounding cars, directing traffic, working in parades, searching along the river bank for lost children and alleged suicide victims, stopping motorists who were violating traffic laws and issuing warnings, returning evidence to the rightful owners, escorting female prisoners and reporting to the dispatcher unusual behavior or possible law violations. Appellant Connie Wolter worked the 10:00 P.M. to 6:00 A.M. shift, patrolling and providing security in the downtown business district for six months in 1974.

The evidence discloses that the male car markers' principal duties were the same. They patrolled the downtown Fargo business district during daylight hours marking cars for overtime parking and issuing tickets for parking and other non-moving violations. The male car markers wore police uniforms, were armed and drove Harley-Davidson three-wheel motorcycles. They also performed the other related police duties subsequently performed by the appellants set forth above.

The District Court found that the following extra duties performed by the male car markers were not subsequently performed by the appellants: (1) providing downtown security; (2) answering calls and complaints relating to fights, fires, automobile accidents and crimes; (3) assisting patrol car units in investigations; (4) interviewing citizens' lodging complaints; (5) issuing tickets for moving violations; and (6) being "on call" for extra duty shifts.

Police officers Ed Harles, Royal Herbold, Kenneth Mikula and Robert Olson served a total of approximately twenty-six and one-half years as male car markers. All of these officers testified that their primary duties, while serving on downtown traffic control, were marking cars and issuing parking tickets. These officers stated that they rarely, if ever, answered calls or investigated crimes. They occasionally filed a complaint blotter when a reportable inci-

dent occurred in their immediate patrol vicinity, but they had received orders from their superior officers to concentrate their attention on marking cars. They further testified they were rarely called for extra duty and rarely shifted to other police divisions while they were serving as male car markers.

Officer Herbold served as a car marker from August, 1966, until April, 1973, when he was replaced by appellant Diane Peltier. He testified that during his assignment to the car marker position, he never made an arrest, never participated in any stakeouts, never drew his gun and never used his three-wheel motorcycle in pursuit of another vehicle. Officer Herbold filed only three complaint blotters during this seven-year period. He testified that his primary duty was to mark cars, and that he rarely did any other kind of police work while assigned to downtown parking control.

Lieutenant John Larsen has served twenty-five years in the Fargo Police Department. He served from approximately 1960 to 1967 as a dispatcher and has served most recently as a shift commander in charge of the day-to-day activities of both male and female police officers. During the period he served as a dispatcher, he could not recall ever sending a male car marker to investigate a domestic problem or a burglary. He stated that it was very rare for the male car markers to be assigned or requested to perform any duty other than marking cars. Lieutenant Larsen also stated that he served as a shift commander when the female car markers replaced the male car markers. He stated that he was unaware of any change in policy or function in the job and that both males and females performed substantially similar duties.

■ We conclude that the extra duties actually performed by the male car markers which were not subsequently performed by the female replacements were very insubstantial. The extra duties performed consumed a minimal amount of time and were essentially incidental to the actually as-

signed and performed duties of the position. The additional training of the male officers and their alleged additional flexibility, when considered in light of the actual duties performed by both the males and females, does not justify the higher pay received by the males. The fifty percent discrepancy in salary between that received by the male car markers and that received by the female car markers violates the Equal Pay Act. We order back pay, with interest, to the appellants.[3] *See Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 2223 (1974) (difference in salary between night male inspectors and daytime female inspectors performed under similar working conditions, a violation of the Act); *Brennan v. Prince Williams Hospital Corporation*, 503 F.2d 282 (4th Cir. 1974), *cert. denied*, 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975) (difference in pay of hospital female aides and male orderlies performing substantially the same duties, a violation of the Act); *Shultz v. American Can Company—Dixie Products, supra* (difference in hourly rate between female day machine operators and male night operators who performed the same tasks ninety-three percent of the time, a violation of the Act).[4]

## II. *TITLE VII.*

Together with their back pay claims, the appellants seek additional affirmative injunctive relief to eliminate sexual discrimination within the Fargo Police Department. They ask that the City be required to hire one female for every male hired as a patrol officer until the ratio of females to males in the Police Department equals the ratio of women to men in the City of Fargo as a whole, and that the Police Department be required to remove all classifications and other barriers that hamper women from being considered equally for promotions and transfers.

We note initially that the appellants failed to appeal from the denial of their class action petition. We also note, as set forth above, that the District Court has required the appellees to adopt validated employment tests, institute an affirmative action program that satisfies federal statutes and regulations and make reports to the court as to its progress.

The record reveals that many of the discriminatory hiring practices have already been altered. The City has abolished potential discriminatory height and weight requirements, it has begun advertising for police officers on a non-sex basis, and it appears to be making efforts to have its employment test validated. In addition, the results of the March 12, 1975, police officer tests show that twenty-eight of the sixty-eight applicants were women, twenty of the sixty who passed were women, and that five of the top ten qualifiers were women.

The record also reveals that the City of Fargo has adopted a general affirmative action plan and that the City Council and Civil Service Commission, with help from the Fargo Branch of the North Dakota

---

**3.** Male patrolmen assigned to car-marking duties prior to June, 1973, received hazardous duty pay of $25.00 per month above the basic patrolman's salary. The appellants assert that they should also be entitled to this hazardous duty pay. Our review of the record indicates that this extra pay was authorized because the officers rode on open three-wheeled motorcycles and incurred extra clothing and cleaning expenses. This extra pay was discontinued when enclosed Cushman and Otis three-wheel scooters replaced the open motorcycles. Since none of the appellants utilized the motorcycles and the granting of this hazardous duty pay was not awarded on a sexual basis, the award of back pay to the appellants need not include this extra duty pay.

**4.** We do not intimate that the Equal Pay Act prohibits public or private employers from reevaluating and reclassifying jobs from time to time on the basis of racially and sexually neutral criteria, and thereafter adjusting the rates of pay on the basis of such reevaluation or reclassification. We simply hold that where new hirings precede a reevaluation or reclassification based on neutral criteria and the purpose or effect of the new hirings is to cause the members of one sex to work at a lesser rate of pay than the members of the opposite sex who are or had been performing substantially the same duties, a violation of the Equal Pay Act occurs.

Coalition of the Status of Women, are presently working on specific plans to fully implement this program.

■ We conclude, therefore, that no general injunctive relief is required from this Court. We are confident that the District Court will carefully monitor the implementation of the affirmative action plans and will require additional specific action if necessary to eradicate any remaining discriminatory policies.

The appellants also request that they be granted the next three available patrol officer positions. This specific request is apparently raised for the first time on appeal. In their post-trial brief to the District Court, the appellants stated that they had never demanded to be made patrol officers but that since they performed the same job as the male car markers, who were classified as patrol officers for the sake of salary and promotion, they should be afforded the same salary, promotion and transfer privileges.

Each of the appellants testified that she had not originally applied for a patrol officer position but instead for general police work. Furthermore, they all declined to make application or take the patrol officer examination in March, 1975, at which time a number of women did apply, took the test and qualified for patrol officer positions. Because the appellants have not taken and passed the patrol officer examination, they have not received the training necessary to perform all the duties of a patrol officer other than those encompassed within the car marker position.

■ We conclude, therefore, that the appellants are not entitled to be classified as patrolmen or to be automatically granted the next three available patrol officer positions. *Compare Rodriguez v. East Texas Motor Freight*, 505 F.2d 40 (5th Cir. 1974). They are car markers and entitled to the same pay as the car markers who preceded them. The fact that their predecessors were patrolmen does not entitle the appellants to that status. This denial of specific relief does not, of course, bar the appellants from applying for the patrol officer position through the normal application and testing procedures if they so desire. Nor does it restrict the appellants from seeking relief in the District Court if they are discriminated against in the future.

## III. *ATTORNEY'S FEES.*

The appellants also appeal from the District Court's award of $2,500 in attorney's fees, claiming that the award is insufficient. The appellees cross appeal, asserting that the award is excessive.

The appellants' counsel submits that he spent 282.2 hours in preparation and at trial, that the award of $2,500, or $8.86 an hour, is insufficient and that the amount of the award will deter future attorneys from undertaking similar sex discrimination suits. The appellees suggest that the award of attorney's fees should reflect the extent to which the appellants have prevailed. Because there was no direct relief granted to these appellants below, they argue that the award should be reduced.

■ Attorney fees may be recovered by the prevailing party in a Title VII action, 42 U.S.C. § 2000e–5(k). Although much of the relief awarded to the appellants comes under the Equal Pay Act, sexual discrimination in violation of Title VII was found by the trial court to require specific relief. We also believe the appellants' lawsuit served as a catalyst to prompt the appellees to take positive action to adopt affirmative action procedures. *See Parham v. Southwestern Bell Telephone Company*, 433 F.2d 421, 429–430 (8th Cir. 1970). We find, therefore, that an award of $4,000 for work done at trial and $1,000 for work performed on appeal is reasonable and should be awarded.

We reverse and order back pay, with interest, and attorney's fees of $5,000.

ROSS, Circuit Judge (concurring).

I concur in the opinion of Judge Heaney and agree that the plaintiffs performed substantially the same services as their male predecessors. I would prefer to be

able to give consideration to the qualifications of the male car markers as well as the duties they performed in determining the amount of back pay to be awarded. I am convinced that on a rational business basis, having this reserve of trained patrol officers who could be used for patrol purposes if needed, justified *some* difference in pay. Unfortunately the regulation does not agree that this is proper. 29 C.F.R. § 800.-14. It is therefore a problem in need of legislative correction rather than judicial interpretation.