[No. 1667–3.   Division Three.   January 11, 1978.]

SUSAN J. ELLINGSON, *Respondent,* v. SPOKANE MORTGAGE COMPANY, ET AL, *Appellants.*

*Raymond R. Tanksley, Jr.,* for appellants.

*Thomas H. Brown* and *Clausen & Brown,* for respondent.

GREEN, J.—Plaintiff brought this action to recover damages for (1) discrimination in employment compensation based upon sex, and (2) an unfair practice resulting from

her discharge following the filing of a discrimination complaint with the Human Rights Commission. From a judgment for plaintiff, defendants appeal. Plaintiff cross–appeals from the denial of damages for alleged mental anguish and emotional distress.

Two questions are presented: (1) Are the findings supported by substantial evidence and, if so, do they support the conclusions of law? and (2) Does the term "actual damages" contained in RCW 49.60.030(2) include damages for mental anguish and emotional distress? We answer each in the affirmative.

The first issue must be resolved in light of the evidence. On June 21, 1971, plaintiff was hired by Spokane Mortgage Co. as a clerk–typist in the loan closing department at a salary of $350 per month. At that time, the department consisted of Mrs. Manning, supervisor, $675 per month; Mr. McCarthy, a loan closer who was hired January 1, 1971, $550 per month; and two other loan closers, Mrs. Madison, $425 per month, and Mrs. Grigsby, $400 per month. Although Mrs. Grigsby had more time with the company as a loan closer, Mr. McCarthy was hired at a higher salary.

In September 1971, Mrs. Madison terminated and plaintiff began handling her duties, "FHA repos", and her pay was raised to $375 per month. At that time, the loan closing department consisted of Mrs. Manning, supervisor, $700 per month; Mrs. Grigsby, loan closer, $450 per month; Mr. McCarthy, loan closer, $600 per month; and plaintiff, $375 per month.

From November 1971 to January 1972, plaintiff filled in for Mr. McCarthy as he was ill, and she began doing all types of closings. Another clerk–typist was transferred to the department. When Mr. McCarthy returned, the substitute typist left and plaintiff reverted to her clerical duties while continuing to close loans on a more limited basis. In April 1972, the loan closing department consisted of Mrs. Manning, supervisor, $700 per month; Mrs. Grigsby, loan closer, $450 per month; Mr. McCarthy, loan closer, $650 per month; and plaintiff, $400 per month.

In early September 1972, when Mrs. Grigsby terminated plaintiff assumed her duties and another clerk–typist was hired for the department but terminated 3 months later. By December 1972, the loan closing department consisted of Mrs. Manning, supervisor, $700 per month; Mr. McCarthy, loan closer, $650 per month; plaintiff, $450 per month; and a clerk–typist $350 per month.

In the spring of 1973, another clerk–typist, Mrs. Mertens, was hired. Around the same time, Mrs. Manning, the supervisor, was discharged. The department then operated with plaintiff and Mr. McCarthy closing all of the loans, and Mrs. Mertens, clerk–typist. The relative salaries were: Mr. McCarthy, $650 per month; plaintiff, $500 per month; and Mrs. Mertens, $300 per month.

Mr. McCarthy testified that plaintiff began doing FHA closings 4 or 5 months after she was hired; and upon his return to work after his illness, she did all types of closings. After Mrs. Manning was discharged, Mr. McCarthy and plaintiff remained side–by–side at their desks, and plaintiff testified that he was not assigned the supervisory position, there was no change in the type of loans that they handled, and that it was just a matter of "Here, you take one and I take the next." Nancy West, another employee of defendants, testified that she observed no difference in the job functions between plaintiff and Mr. McCarthy; and that after Mrs. Manning's termination, she asked Mr. McCarthy whether he was the supervisor but he just "shrugged his shoulders." To the contrary, Mr. Robic, the executive vice–president of Spokane Mortgage, testified that Mr. McCarthy became the supervisor when Mrs. Manning terminated, although the employees were not so informed.

In addition to closing loans, Mr. McCarthy signed checks and completion certificates, and ordered title insurance and surveys. However, these tasks were routine and simple, requiring no particular skill. In fact, plaintiff also ordered insurance and surveys. In an attempt to explain the difference in pay between plaintiff and Mr. McCarthy, defendants offered the testimony of Mr. Robic. He stated that due

to Mr. McCarthy's former banking experience, he could be consulted regarding bank financing procedures. The record indicates this occurred once every 2 or 3 months. The trial court concluded in its oral decision that the use of Mr. McCarthy's prior experience was minimal.

There is substantial evidence from which the court could have found that from September 1971 to September 1972, plaintiff did almost all of the FHA repossession loan closings and some construction and regular closings; that during the same period, Mr. McCarthy processed all three types of loan closings; that from September 1972 to February 1973, plaintiff and Mr. McCarthy handled the same types of loan closings; and that plaintiff's work was and continued to be substantially the same as that performed by Mr. McCarthy.

In January 1974, plaintiff, and several other female employees of defendants, filed complaints[1] with the Washington State Human Rights Commission alleging discrimination in employment compensation on the basis of sex. After plaintiff's complaint was filed, she was informed, for the first time, that Mr. McCarthy was the supervisor and would sign her time sheets. Defendants for the first time listed Mr. McCarthy as the supervisor and named all male employees as supervisors or executives on the payroll. In March, plaintiff was assigned additional clerical duties and did proportionately less closings than had been the pattern in the past. She was not given a salary increase in April, when the other employees got a raise, and on May 10, she was terminated. Mr. Robic stated the discharge was necessitated by a decrease in defendants' business. Although plaintiff had seniority and was qualified as a clerk–typist, defendants did not accord her that seniority by transferring her to another department, even though it was their general policy to transfer senior employees in the clerical field when

---

[1]The disposition of plaintiff's complaint is not disclosed in the record. However, it is apparent that it was eventually abandoned by her election to pursue the instant court action. RCW 49.60.020.

layoffs occurred. In the brief investigation by the commission, defendants answered interrogatories and denied that plaintiff was a "loan closer." After receiving unemployment compensation, plaintiff obtained another position doing loan closings, and within a few months her salary increased to $700 per month.

The trial court entered findings of fact, substantially as outlined above, detailing the relative positions and salaries within the loan closing department during the period of plaintiff's employment. It determined that defendants' actions constituted discrimination in employment and compensation on the basis of sex in violation of RCW 49.60.180.[2] Through an evaluation of the work performed by Mr. McCarthy and plaintiff, the court arrived at wage differentials for the pertinent time periods and fixed the amount of damages at $3,118.75. It also determined that defendants' actions subsequent to the filing of plaintiff's complaint with the commission constituted a retaliatory and unfair practice under RCW 49.60.210.[3] It awarded additional damages in the amount of $750 under the discretion authorized by RCW 19.86.090[4] and the remedies allowed by the United States Civil Rights Act of 1964, and attorney's fees and costs to plaintiff. RCW 49.60.030(2); RCW 19.86.090; 42 U.S.C. § 2000e *et seq.*

---

[2]RCW 49.60.180:
"It is an unfair practice for any employer:
". . .
"(3) To discriminate against any person in compensation or in other terms or conditions of employment because of such person's . . . sex . . ."

[3]RCW 49.60.210:
"It is an unfair practice for any employer . . . to discharge, expel, or otherwise discriminate against any person because he has opposed any practices forbidden by this chapter, or because he has filed a charge, testified, or assisted in any proceeding under this chapter."

[4]RCW 49.60.030(3) provides that any act prohibited and related to sex discrimination committed in the course of trade or commerce in Washington, is an unfair practice under RCW 19.86.020 and subject to its penalty provisions.
RCW 19.86.090 authorizes recovery of treble damages, not to exceed $1,000 for violation of RCW 19.86.020, which is discretionary with the court.

THE APPEAL

First, defendants challenge many of the findings of fact which constitute the statement of facts recited above. They argue that the evidence only presents a difference in salary between plaintiff and Mr. McCarthy which is based on their comparative experience, seniority, quantity of production and worth to the company. They contend that plaintiff has failed to meet her burden of proof that the disparity in compensation was based on sex discrimination. We disagree.

Plaintiff commenced this action under the "law against discrimination", RCW 49.60, which prohibits discrimination in compensation because of sex and denotes such discrimination an unfair practice.[5] The basis of the action is disparate treatment between persons of the opposite sex who are otherwise similarly situated. It is, therefore, incumbent on the plaintiff to carry the initial burden of establishing a prima facie case of discrimination on the basis of sex. Here, the prima facie case was shown by evidence that the plaintiff, a member of one sex, received different treatment, *i.e.*, less wages, than a person of the other sex where both are similarly situated,[6] doing substantially equal work. Once the prima facie case is shown, the burden of going forward then shifts to the employer to demonstrate that the difference in compensation is due to legitimate nondiscriminatory reasons, *i.e.*, factors other than sex. If the employer can overcome the prima facie case by showing

---

[5]RCW 49.60.180, see footnote 2, is patterned similarly to the United States Civil Rights Act of 1964. 42 U.S.C. § 2000e–2(a) (1974) states:
    It shall be an unlawful employment practice for an employer—
        (1) . . . to discriminate against any individual with respect to his compensation . . . because of such individual's . . . sex . . .
These laws constitute the broad–type civil rights statutes and cases decided under the federal law are persuasive authority for the requirements of proof under RCW 49.60.

[6]Since direct evidence of discrimination is very difficult if not impossible to produce, courts have recognized the use of comparative evidence based on "similarly situated" persons. *Gates v. Georgia–Pacific Corp.*, 326 F. Supp. 397, 399 (D. Ore. 1970), *aff'd*, 492 F.2d 292 (9th Cir. 1974). See RCW 49.12.175; see footnote 7.

a reasonable basis for the disparate treatment, then the burden shifts back to the plaintiff to demonstrate that the presumptively valid reasons were nonetheless a pretextual and discriminatory action. The ultimate burden of proof is on the plaintiff by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).

Here, plaintiff presented evidence of the difference in compensation and similarity in job function and performance. Based upon substantial evidence, the court found that the work performed by plaintiff and Mr. McCarthy was "substantially the same" for the pertinent time periods, yet plaintiff's compensation was less than Mr. McCarthy received. Thus, plaintiff met her burden of establishing a prima facie case. Defendants then presented evidence that Mr. McCarthy performed additional tasks and was worth more to their enterprise due to his banking background. However, the trial court, as the trier of fact, was not persuaded. Rather, in light of the court's oral opinion, it determined in essence that the additional tasks were minimal and did not entail a sufficient amount of time or importance to alter the fact that plaintiff was performing substantially the same work as Mr. McCarthy, but for less pay.[7]

---

[7]Although this case was not brought under an equal pay statute, these findings are in accord with decisions under the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1), which prohibits wage discrimination based on sex and requires equal pay for equal work on jobs of "equal skill, effort and responsibility." The "equal" standard means substantially equal, rather than identical; and the considerations are actual job requirements and performance, not classifications or titles. The crucial question is whether the nature of the job actually performed requires or utilizes the additional training or skills claimed by the employer to be possessed by the compared employee of the opposite sex. Higher pay for extra duties is not justified where those duties are of peripheral importance and consume a minimal amount of time. *Shultz v. Wheaton Glass Co.,* 421 F.2d 259 (3d Cir.), *cert. denied,* 398 U.S. 905, 26 L. Ed. 2d 64, 90 S. Ct. 1696 (1970); *Di Salvo v. Chamber of Commerce,* 416 F. Supp. 844 (W.D. Mo. 1976); *Peltier v. Fargo,* 533 F.2d 374 (8th Cir. 1976); *Brennan v. South Davis Community Hosp.,* 538 F.2d 859 (10th Cir. 1976); *Brennan v. Sears, Roebuck & Co.,* 410 F. Supp. 84 (N.D. Iowa 1976); *Dunlop v. General Elec. Co.,* 401 F. Supp. 1353 (W.D. Va. 1975). (We note that

Nonetheless, defendants contend that based on the evidence, the trial court could not have properly evaluated the worth of Mr. McCarthy's consultant services which they argue justified his higher salary. We find defendants' argument *misplaced*. The burden of going forward with an adequate explanation that the discrepancy in compensation was based on a factor other than sex is on the employer. *McDonnell Douglas Corp. v. Green, supra.*[8] Here, the trial court was not persuaded by the explanation offered to counter plaintiff's prima facie case.

■ We have reviewed the record and find substantial evidence to support the trial court's findings which will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 575, 343 P.2d 183 (1959). Further, the conclusions of law follow from these findings.

### THE CROSS APPEAL

Plaintiff assigns error to conclusion of law No. 7:

That RCW 49.60 does not authorize or permit recovery for mental anguish or emotional distress.

Plaintiff presented evidence to the trial court of mental anguish and emotional distress resulting from defendants' actions. She argues that under the statutory remedy provided, such damages are included. We agree.

■ RCW 49.60.030(2) states:

Any person deeming himself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, *to recover the actual damages sustained* by him, or both, together with the cost of suit including a reasonable attorney's fees or any other remedy authorized by this chapter or the United States Civil Rights Act of 1964; . . .

---

the Washington equal pay statute, RCW 49.12.175, uses the standard "similarly employed", rather than the statutory criteria of the Federal Equal Pay Act.)

[8]Likewise, the justifications for wage discrepancy under the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1) are affirmative defenses of the employer. *Shultz v. Wheaton Glass Co.,* 421 F.2d 259 (3d Cir. 1970).

(Italics ours.) Neither the statutory language nor the legislative history of RCW 49.60 indicates the intended scope of the term "actual damages" as used therein.[9] Therefore, the familiar legal term is to be given its familiar legal meaning. *Rasor v. Retail Credit Co.*, 87 Wn.2d 516, 530, 554 P.2d 1041 (1976) (interpreting the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (1970)).

"Actual damages" is defined as:

> Real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed on the one hand to "nominal" damages, and on the other to "exemplary" or "punitive" damages. Synonymous with "compensatory damages" and with "general damages."

(Citations omitted.) Black's Law Dictionary 467 (4th ed. rev. 1968); *see Rasor v. Retail Credit Co., supra* at 530 n.3; 2 Words and Phrases *Actual Damages* 363–68 (perm. ed. 1955).

■ The generally accepted legal meaning of "actual damages" is recognized in *Rasor v. Retail Credit Co., supra* at 529:

> In reference to the type of harm suffered, the term "actual damages" has a generally accepted legal meaning. Although it declined to define "actual injury," the United States Supreme Court recently noted the variety of harm which may result when damage is actually sustained. Suffice it to say that actual injury is not limited to out–of–pocket loss. Indeed, the *more customary types of actual harm* inflicted by defamatory falsehood *include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.* Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury,

---

[9]This is not a case for a common–law recovery for emotional distress based on intentional discrimination or an intentional tort, but rather, a cause of action created by statute. Thus, it is necessary to look to the legislative intent to determine the scope of the remedy created. *See* Annot., 61 A.L.R.3d 944; 46 Wash. L. Rev. 491 (1971); 35 Wash. L. Rev. 245 (1960).

although there need be no evidence which assigns an actual dollar value to the injury.

(Italics ours.) *Gertz v. Robert Welch, Inc.* [418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974)], *supra* at 350. *Accord, Weaver v. Bank of America Nat'l Trust & Sav. Ass'n* [59 Cal. 2d 428, 380 P.2d 644, 30 Cal. Rptr. 4 (1963)], *supra; Anderson v. Pantages Theatre Co.,* 114 Wash. 24, 31, 194 P. 813 (1921). *It is important to note* that although *Gertz* was a defamation action, it is clear that the *court's language is not limited to such cases.*

(Italics ours.) Therefore, we hold that the recovery of "actual damages" under the law against discrimination, RCW 49.60, is not limited to merely pecuniary or out-of-pocket losses or, as the case here, to the wage compensation differential. Rather, the remedy and the recovery authorized by the statute encompasses all claims for compensatory damages for injury in fact, as distinguished from exemplary, nominal or punitive damages. This conclusion is consistent with the mandate of liberal construction of this remedial legislation to effectuate its purposes. RCW 49.60-.010-.020.

Inasmuch as no findings were entered relative to plaintiff's claimed damages for mental anguish and emotional distress, we remand to the trial court. Without passing on the sufficiency or the competency of plaintiff's evidence, the trial court is directed to evaluate the evidence presented, and enter appropriate findings, conclusions and judgment. In addition, the trial court is directed to award the respondent reasonable attorney's fees on appeal in accordance with RCW 49.60.030(2).

MUNSON, C.J., and MCINTURFF, J., concur.

Petition for rehearing denied February 23, 1978.