# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JERYMAINE BEASLEY, | No. 54997-2-II |
| Appellant/Cross Respondent, | |
| v. | |
| GEICO GENERAL INSURANCE COMPANY, a foreign insurer, | PART PUBLISHED OPINION |
| Respondent/Cross Appellant, | |
| and | |
| AARON YAWS and JANE DOE YAWS, husband and wife and their marital community, | |
| Defendants. | |

CRUSER, A.C.J. — This case involves an action under RCW 48.30.015, a provision of the Insurance Fair Conduct Act[1] (IFCA). The primary issue is whether the term "actual damage" as used in RCW 48.30.015 includes noneconomic damages.

The appellant/cross respondent, Jerymaine Beasley, challenges the trial court's orders (1) granting the uninsured motorist (UIM) insurer GEICO General Insurance Company's motion to exclude noneconomic damages from the actual damages recoverable under IFCA and not instructing the jury on noneconomic damages related to the IFCA claim, and (2) denying Beasley's

---

[1] Laws of 2007, ch. 498 § 1.

post-trial motion for reconsideration. GEICO cross appeals, arguing that (1) the IFCA claim was not proper because it was based on regulatory violations, (2) the trial court erred when it granted Beasley's motion as a matter of law and found that GEICO had unreasonably denied payment of benefits by failing to pay the agreed-to portion of a settlement offer, and (3) the trial court erred when it granted Beasley's request to treble the IFCA damages award because that decision was based on a mischaracterization of the evidence.

In the published portion of this opinion, we hold that noneconomic damages are available under IFCA, reverse the trial court's orders related to noneconomic damages under IFCA, and remand for a new trial on noneconomic damages. In the unpublished portion of this opinion, we reject the cross appeal arguments.

FACTS

I. ACCIDENT AND DEMAND

Jerymaine Beasley was injured in a car accident that occurred when he was the passenger in Anar Askerov's vehicle. The accident was caused by the driver of the other car, who had policy limits of $25,000 and therefore was "underinsured." Clerk's Papers (CP) at 3. Askerov's insurance policy with GEICO included UIM coverage.

Beasley demanded that GEICO pay the $100,000 limit of Askerov's UIM policy. GEICO offered to pay $10,000 to settle Beasley's UIM claim. Beasley rejected the offer as insufficient, but his counsel requested that GEICO pay the $10,000 as an undisputed UIM amount. GEICO did not issue the $10,000 payment.

## II. LAWSUIT

Beasley sued GEICO. Among other claims, Beasley alleged that GEICO had violated RCW 48.30.015 of IFCA, breached the duty of insurance good faith, breached its fiduciary duty, violated the Consumer Protection Act[2] (CPA), acted negligently, and breached the insurance contract. Beasley sought a broad range of relief including "special, general and/or actual damages;" "exemplary/punitive damages;" "costs, including reasonable attorney's fees;" and "treble damages . . . for each violation by [GEICO] of [IFCA]." *Id.* at 7-8. The case proceeded to a jury trial.

### A. TRIAL TESTIMONY

#### 1. GARY WILLIAMS

At trial, Gary Williams, an attorney and former insurance adjuster, testified for Beasley. Williams testified that even when the ultimate amount of the claim is in dispute, "[i]nsurance companies should pay what we call 'undisputed amounts,'" the amount "that this case is not going to go below." 3 Report of Proceedings (RP) at 353.

Williams further testified that GEICO made a settlement offer of $10,000 in exchange for Beasley " 'drop[ping] all [of his] claims.' " *Id.* at 356. He noted that GEICO did not dispute that it owed Beasley $10,000, but it never paid Beasley the $10,000.

#### 2. MICHAEL MURPHY

Michael Murphy, the claims supervisor at GEICO who initially handled Beasley's UIM claim, also testified for Beasley. Murphy testified that he was taken off the claim after Beasley filed his IFCA notice and was replaced by claims adjuster Lawrence Bork.

---

[2] Chapter 19.86 RCW.

Murphy also testified about his training at GEICO when he joined the company in 2010. Murphy testified that pain and suffering were two types of noneconomic damages and that he was trained on how to evaluate pain and suffering claims. He admitted that he was not "to [his] knowledge" ever trained "on any other elements of noneconomic damages." 4 RP at 473. And he agreed that during his tenure as a bodily injury adjuster supervisor, he had "never valuated and paid for any noneconomic damages other than pain and suffering." *Id.* at 474. But he acknowledged that "loss of enjoyment of life, embarrassment, inconvenience, noneconomic damages, other than pain and suffering," could "sometimes be part of the claim that's being made." *Id.* at 475-76. And he stated that he recalled cases in which such damages were awarded.

In response to a jury question, Murphy testified that there were times GEICO would pay undisputed benefits in a UIM claim before the case was final. Murphy then testified about what "undisputed benefits in UIM cases" were:

Q. [Beasley's counsel]  So what are undisputed benefits in UIM cases?

A. [Murphy]  Okay. So my understanding is that if we're in the phase of negotiation where there's an offer and a demand, a dollar figure, then there would be an undisputed amount.

If the offer is lower than the demand, then the offer—usually, it would be outside of our procedure to pay the offer before there's an agreed-upon amount, but it could be possible. I've heard of situations where it could be.

Q. So a settlement offer is what an undisputed benefit is in the UIM context under your definition?

A. In my understanding, yeah.

Q. So if an offer is made in a UIM case, and you told us earlier that undisputed UIM benefits should be paid as soon as possible, then whatever that amount of the offer is, it should be paid as soon as possible, right?

A. Yes.

Q. And not paying that would be a violation of insurance standards, wouldn't it?

A. Yes.

*Id.* at 616-17.

3. LAWRENCE BORK

Bork testified that after he was assigned to Beasley's UIM claim, he made "a settlement offer of $10,000." *Id.* at 620. In response to Beasley's counsel asking if "those would be undisputed UIM benefits," Bork responded, "[t]hat was the offer that was made, yes." *Id.*

Counsel then asked Bork if "those would be undisputed UIM benefits that the claim[ant] is entitled to?" *Id.* at 621. Bork responded, "It was the—it was the offer made as settlement that— that we believe was fair and reasonable as a settlement offer." *Id.* Counsel then asked Bork if he disputed whether those benefits were owed, and Bork responded, "No." *Id.* Bork later agreed that he had valued Beasley's UIM claim at $10,000. Bork also testified that he did not issue a check to Beasley for $10,000.

B. MOTION TO EXCLUDE NONECONOMIC DAMAGES UNDER IFCA CLAIM AND IFCA DAMAGES JURY INSTRUCTION

After Beasley presented his case-in-chief, GEICO moved to prevent him from arguing that he was entitled to noneconomic damages under the IFCA claim or from presenting any jury instructions to that effect. GEICO admitted that there was no state case law addressing the availability of noneconomic damages in an IFCA claim, but it directed the trial court to two federal cases, *Schreib v. American Family Mutual Insurance Co.*, 129 F. Supp. 3d 1129, (W.D. Wash. 2015), and *Dees v. Allstate Insurance Co.*, 933 F. Supp. 2d 1299 (W.D. Wash. 2013).

Relying on *Schreib*, the trial court concluded that the IFCA claim did not include noneconomic damages because the claim sounded in negligence rather than intentional tort, and granted GEICO's motion. Based on this ruling, the trial court refused to provide the jury with Beasley's proposed instruction on damages under IFCA that included noneconomic damages.

C. BEASLEY'S CR 50 MOTION

During trial, Beasley moved under CR 50 for the trial court to decide as a matter of law that GEICO had violated IFCA based on GEICO's "fail[ure] to pay undisputed UIM benefits and refus[al] to pay them as soon as possible." 1 RP at 32. GEICO opposed this motion, arguing that the $10,000 was a compromise offer rather than an undisputed amount and that the jury, not the court, should determine if the $10,000 was an undisputed amount.

The trial court granted Beasley's motion, stating:

> At this point we have no evidence in contradiction. We have the letter, but it's just an interpretation. But the person who's somewhat behind the authoring of that letter says, "I construed that as 10,000 undisputed."
>
> Based on the evidence, I think I have to rule in favor of plaintiffs on this.

*Id.* at 54.

When instructing the jury on the elements of the IFCA claim, the trial court included the following language: "The Court has determined the [GEICO] unreasonably denied the payment of benefits by failing to pay the undisputed $10,000 offer of UIM benefits made on October 23, 2015." CP at 164.

D. VERDICT

The jury found that Beasley had proven his IFCA claim and that Beasley's IFCA-related damages were $84,000. The jury further found that Beasley had proved his insurance bad faith claim and that he had incurred $400,000 in noneconomic damages related to that claim.

E. BEASLEY'S MOTION FOR RECONSIDERATION AND TREBLING OF IFCA DAMAGES

After the verdict, Beasley moved for reconsideration of the trial court's exclusion of noneconomic damages under the IFCA claim. Beasley also requested that the trial court treble the IFCA damages awarded by the jury. He further argued that if the trial court reconsidered the exclusion of the noneconomic damages under IFCA, the court should treble the noneconomic damages awarded for the insurance bad faith claim because the noneconomic damages under IFCA would be the same. This would result in an additional damages of $800,000.

Relying on *Schreib*, the trial court denied Beasley's "motion for reconsideration regarding [noneconomic] damages under [IFCA]." *Id.* at 267. But the trial court granted Beasley's trebling request as to the IFCA damages awarded by the jury. The court's order granting this motion stated,

> At one point in the trial this court was *shocked by the testimony of Mr. Murphy . . . that he did not in this case or ever in any case consider any [noneconomic] damages other than pain and suffering and has never been trained to consider any other [noneconomic] damages*. This court in exercising its discretion believes it is appropriate to treble the award of the $84,000 as found by the jury to $252,000 as a deterrence to [GEICO] to not use unfair practices as found by the jury and the Court.

*Id.* at 269-70 (emphasis added).

7

Beasley appeals the trial court's ruling that IFCA does not include noneconomic damages.[3] GEICO cross appeals the verdict on the IFCA claim, the trial court's decision on Beasley's CR 50 motion, and the trial court order trebling the IFCA damages.

ANALYSIS

BEASLEY'S APPEAL

Beasley argues that the trial court erred when it ruled that noneconomic damages[4] are not "actual damages" under RCW 48.30.015 and that they are therefore not "recoverable and subject to trebling under IFCA."[5] Br. of Appellant/Cross Respondent at 12 (boldface omitted). He contends that "the plain language" of RCW 48.30.015 and the "purpose of IFCA" demonstrate that "actual damages" include noneconomic damages. *Id.* at 2. And he asks us to remand for the trial court to decide whether to treble the noneconomic damages awarded by the jury for the insurance bad faith claim rather than remand for a new trial on damages.

---

[3] Beasley initially sought direct review with our supreme court. Our supreme court denied direct review and transferred the appeal to this court. Order, *Beasley v. Geico Gen. Ins. Co.*, No. 98255-4 (Wash. July 8, 2020).

[4] " 'Noneconomic damages' means subjective, nonmonetary losses, including, but not limited to pain, suffering, inconvenience, mental anguish, disability or disfigurement incurred by the injured party, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation, and destruction of the parent-child relationship." RCW 4.56.250(1)(b).

[5] Beasley assigns error to the trial court's ruling that RCW 48.30.015 does not allow for noneconomic damages, its subsequent refusal to instruct the jury that "actual damages" under the IFCA claim included noneconomic damages, and its denial of Beasley's motion for reconsideration and request to treble the noneconomic damages awarded in the bad faith claim. But Beasley does not differentiate between these decisions in his argument. Because each of the trial court's challenged decisions are based on the legal question of whether "actual damages" under RCW 48.30.015 includes noneconomic damages, this opinion likewise does not present a separate analysis for each trial court decision.

GEICO responds that (1) we should dismiss the appeal regardless of whether the trial court erred because we cannot grant the sole relief Beasley is seeking, and (2) the trial court did not err when it excluded noneconomic damages from the damages available under IFCA because such damages are limited to intentional torts and because the legislative history and purpose of the statute do not demonstrate the legislature intended to include noneconomic damages.

We hold that (1) our inability to provide the exact relief Beasley requests does not preclude consideration of Beasley's appeal, (2) the term "actual damages" is ambiguous and not subject to a plain language interpretation, (3) following our supreme court's decision in *Segura v. Cabrera*,[6] the intentional tort test established in *White River Estates v. Hiltbruner*[7] does not apply when determining the meaning of the term "actual damages," (4) the legislative history demonstrates that the legislature intended "actual damages" to include noneconomic damages under IFCA because this legislation was intended to protect insureds from an insurer's unreasonable actions, and (5) the appropriate remedy is to reverse the trial court's decision excluding noneconomic damages under the IFCA claim and to remand this matter to the trial court for a new trial on noneconomic damages related to the IFCA claim.

A. GEICO'S REQUEST TO DISMISS APPEAL

As a preliminary matter, GEICO contends that we "should dismiss the appeal and not reach any of the issues in this appeal because the [sole] relief requested is not allowed under Washington law" Br. of Resp't/Cross Appellant at 12. As discussed below, GEICO is correct that we cannot

---

[6] 184 Wn.2d 587, 595-96, 362 P.3d 1278 (2015).

[7] 134 Wn.2d 761, 953 P.2d 796 (1998).

grant the precise relief Beasley requests. *See infra* Part C. But we are not required to dismiss the appeal because the sole relief requested is not available.

Citing RAP 2.5(a) and *Hammond v. Hammond*, 26 Wn. App. 129, 133, 611 P.2d 1352 (1980), GEICO contends that because Beasley did not request the remedy of a new trial on damages in the trial court, we cannot substitute that remedy for the remedy requested in Beasley's motion for reconsideration. As to RAP 2.5(a), that rule applies to "claim[s] of error," not the nature of the remedy requested. The rule is also discretionary, and we have the discretion to consider an issue even if it was not raised in the trial court. *State v. Blazina*, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015). And *Hammond* is inapposite because it addresses an attempt to modify a preexisting divorce decree. 26 Wn. App. at 133. Here, in contrast, we are addressing trial court rulings and a jury verdict, not a prior final decree or agreement. Additionally, Beasley clearly sought a jury verdict on noneconomic damages and requested that the trial court treble those damages at trial.

GEICO fails to direct us to any authority establishing that we are limited to the remedy requested by the appellant in a motion for reconsideration. And even if we cannot grant the specific relief Beasley requests, that does not mean that we cannot provide effective relief if Beasley's argument is successful. *See* RAP 1.2 (the appellate court liberally interprets the rules of appellate procedure "to promote justice and facilitate the decision of cases on the merits."); RAP 12.2 ("The appellate court may reverse, affirm, or modify the decision being reviewed and take any other action as the merits of the case and the interest of justice may require."). Accordingly, we reject GEICO's request to dismiss the appeal and address the merits of Beasley's appeal.

No. 54997-2-II

B. MEANING OF "ACTUAL DAMAGES"

Beasley argues that the trial court erred when it ruled that noneconomic damages are not "actual damages" under RCW 48.30.015 and are therefore not "recoverable and subject to trebling under IFCA." Br. of Appellant/Cross Respondent at 12 (boldface omitted). He contends that "the plain language" of RCW 48.30.015 and the "purpose of IFCA" demonstrate that "actual damages" include noneconomic damages. *Id.* at 2.

GEICO responds that the trial court did not err when it excluded noneconomic damages from the damages available under RCW 48.30.015. GEICO argues that noneconomic damages are not available because *White River Estates* limits noneconomic damages to intentional torts and because the legislative history and purpose of the statute do not demonstrate that the legislature intended to include noneconomic damages.

Whether the term "actual damages" as used in RCW 48.30.015 includes noneconomic damages is an issue of first impression under Washington law.[8] We hold that the legislative history

_____

[8] Although there has been considerable IFCA litigation, the bulk of that litigation has occurred in the federal courts under diversity jurisdiction. *See Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 678 n.2, 389 P.3d 476 (2017) (citing Shannon M. Kilpatrick, *Sounding the Alarm: Is Diversity Jurisdiction Interfering with Washington State's Development of Its Own Body of Law Related to the Insurance Fair Conduct Act?*, 49 Gonz. L. Rev. 553, 554 (2013-14)). GEICO argues that we should adopt the reasoning in one of those cases, *Schreib*. But "[f]ederal cases are not binding on this court, which is 'free to adopt those theories and rationale which best further the purposes and mandates of our state statute[s].' " *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 491, 325 P.3d 193 (2014) (quoting *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 361-62, 753 P.2d 517 (1988), *abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 404 P.3d 464 (2017)). While we can look to federal cases for guidance when the federal court is interpreting a parallel federal counter part, the parties do not argue that there is a federal counterpart to IFCA, so the federal cases are even less relevant in this case. Notably, although the federal district court certified this issue to our supreme court in 2013, the issue was never addressed because that case settled. *See* Raymond Bishop, *Morella: What Might Have Been*, 49 Gonz. L. Rev. 583, 584 (2014).

Beasley cites to two Washington cases, *Mutual of Enumclaw Insurance Co. v. Myong Suk Day*, 197 Wn. App. 753, 769, 393 P.3d 786 (2017), and the unpublished case *Nelson v. Geico General Insurance Co.*, No. 72632-3-I, slip op. at 19-20 (Wash. Ct. App. Jan. 11, 2016), https://www.courts.wa.gov/opinions/pdf/726323.pdf, for his assertion that Washington courts have interpreted "actual damages" as used in RCW 48.30.015 as including noneconomic damages. Neither case is helpful here. Although the issue of whether "actual damages" includes noneconomic damages was raised in *Day*, Division One of this court declined to address the issue since it was being raised for the first time on appeal. *Day*, 197 Wn. App. at 769. And in *Nelson*, Division One did not address the issue because the insurer did not dispute that these damages were "actual damages" under IFCA. *Nelson*, No. 72632-3-I, slip op. at 19-20.

Additionally, although two cases state that IFCA's use of the term "actual damages" limits treble damages to economic damages, neither of those cases analyzes the meaning of "actual damages" under IFCA. In *Pendergrast v. Matichuck*, 189 Wn. App. 854, 874, 355 P.3d 1210 (2015), *aff'd*, 186 Wn.2d 556, 379 P.3d 96 (2016), Division One of this court stated, "Certain other Washington statutes with similar [trebling] provisions explicitly limit treble damages to actual, economic damages. The Insurance Fair Conduct Act, chapter 48.30 RCW, provides that the superior court may increase an award to 'an amount not to exceed three times the actual damages.' " Similarly, in *Pendergrast*, our supreme court stated that IFCA "limit[ed]" damages to actual damages, and thus, excluded noneconomic damages. 186 Wn.2d at 567. But Division One and our supreme court merely assumed, without analysis or citation to authority, that "actual damages" under IFCA are limited to economic damages.

demonstrates that noneconomic damages are "actual damages" under RCW 48.30.015 and reverse the trial court.

1. RCW 48.30.015

This appeal requires us to interpret RCW 48.30.015. RCW 48.30.015 was enacted by the legislature as part of IFCA and ratified by referendum measure in 2007. LAWS OF 2007, ch. 498, §3; Referendum Measure 67 (approved Nov. 6, 2007). RCW 48.30.015 provides in part:

> (1) Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the *actual damages* sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs, as set forth in subsection (3) of this section.
>
> (2) The superior court may, after finding that an insurer has acted unreasonably in denying a claim for coverage or payment of benefits or has violated a rule in subsection (5) of this section, increase the total award of damages to an amount not to exceed three times the *actual damages*.
>
> (3) The superior court shall, after a finding of unreasonable denial of a claim for coverage or payment of benefits, or after a finding of a violation of a rule in subsection (5) of this section, award reasonable attorneys' fees and actual and statutory litigation costs, including expert witness fees, to the first party claimant of an insurance contract who is the prevailing party in such an action.
>
> . . . .
>
> (5) A violation of any of the following is a violation for the purposes of subsections (2) and (3) of this section:
> [Listing various insurance regulations]
>
> . . . .
>
> (6) This section does not limit a court's existing ability to make any other determination regarding an action for an unfair or deceptive practice of an insurer or provide for any other remedy that is available at law.
>
> . . . .

(8)(a) Twenty days prior to filing an action based on this section, a first party claimant must provide written notice of the basis for the cause of action to the insurer and office of the insurance commissioner. Notice may be provided by regular mail, registered mail, or certified mail with return receipt requested. Proof of notice by mail may be made in the same manner as prescribed by court rule or statute for proof of service by mail. The insurer and insurance commissioner are deemed to have received notice three business days after the notice is mailed.

(b) If the insurer fails to resolve the basis for the action within the twenty-day period after the written notice by the first party claimant, the first party claimant may bring the action without any further notice.

(c) The first party claimant may bring an action after the required period of time in (a) of this subsection has elapsed.

(d) If a written notice of claim is served under (a) of this subsection within the time prescribed for the filing of an action under this section, the statute of limitations for the action is tolled during the twenty-day period of time in (a) of this subsection.

(Emphasis added).

2. LEGAL PRINCIPLES

Whether the term "actual damages" as used in RCW 48.30.015 includes noneconomic damages is a question of statutory interpretation. We review issues of statutory interpretation de novo. *Perez-Crisantos v. State Farm Fire and Cas. Co.*, 187 Wn.2d 669, 675, 389 P.3d 476 (2017).

Our goal when interpreting a statute "is to ascertain and carry out the legislature's intent." *Keodalah v. Allstate Ins. Co*., 194 Wn.2d 339, 344, 449 P.3d 1040 (2019). The primary indicator of legislative intent is the plain and unambiguous meaning of the words in a statute. *State v. Johnson*, 104 Wn.2d 179, 181, 703 P.2d 1052 (1985). When considering the plain meaning of the words in a statute, this court must examine the meaning of the words in the context of the statute as a whole and related provisions, related amendments, and " 'the statutory scheme as a whole.' "

*Keodalah*, 194 Wn.2d at 344 (internal quotation marks omitted) (quoting *State v. Evergreen Freedom Found.*, 192 Wn.2d 782, 789, 432 P.3d 805 (2019)).

"If after reading the statute in context, it 'remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history.' " *Perez-Crisantos*, 187 Wn.2d at 676 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 12, 43 P.3d 4 (2002)). Because IFCA was ratified by referendum measure, this court must also consider "the intent of the voters who ultimately ratified IFCA" when examining legislative intent. *Id.*

### 3. BEASLEY'S PLAIN LANGUAGE ARGUMENT

Citing *Rasor v. Retail Credit Co.*, 87 Wn.2d 516, 554 P.2d 1041 (1976), and *Martini v. Boeing Co.*, 137 Wn.2d 357, 971 P.2d 45 (1999), Beasley argues that the term "actual damages" has a plain language meaning that unambiguously includes noneconomic damages. Beasley asserts that even though these cases interpret different statutes, the Washington Law Against Discrimination[9] (WLAD) and the federal Fair Credit Reporting Act[10] (FCRA), we should hold that the same definition of "actual damages" applies here.

Although *Rasor* and *Martini* appear at first blush to rely on a plain language interpretation of "actual damages," our supreme court expressly rejected this interpretation of *Rasor* and *Martini* in *Segura*. Instead, the court held that the term "actual damages" is ambiguous and that *Rasor* and *Martini* had in in fact concluded that "actual damages" included compensatory, noneconomic

---

[9] Chapter 49.60 RCW.

[10] 15 U.S.C. § 1681 *et seq.*

damages based on the legislative purposes of their respective statutes.[11] *Segura*, 184 Wn.2d at 594-96. We are bound by the *Segura* court's holding that "actual damages" is an ambiguous term. Accordingly, Beasley's plain language argument fails.

### 4. GEICO's INTENTIONAL TORT ARGUMENT

Relying on *White River Estates*, GEICO argues that the trial court did not err in refusing to allow Beasley to seek "emotional distress" damages under RCW 48.30.015 because such damages are only available for statutory violations when they amount to intentional torts and an action under IFCA is not an intentional tort. Br. of Resp't/Cross Appellant at 28. Because *White River Estates* did not address the definition of "actual damages" and *Segura* provides a more specific analytical framework that applies when the statute in question requires interpretation of "actual damages," we reject GEICO's intentional tort argument.

Before our supreme court decided *Segura* in October 2015, it addressed the availability of "emotional distress" damages, a form of noneconomic damages, based on statutory violations of the Mobile Home Landlord Tenant Act[12] (MHLTA) in *White River Estates*. 134 Wn.2d at 765. In *White River Estates*, a landlord appealed a jury award of emotional distress damages for a violation of RCW 59.20.073(5), a provision of the MHLTA, that provided, in part, "Consent to an assignment [of a rental agreement] shall not be unreasonably withheld." RCW 59.20.073(5); *White River Estates*, 134 Wn.2d at 765**.**

---

[11] A four-justice concurrence disagreed, stating that "the majority [had rejected] the definition of 'actual damages' established by [our supreme court's] prior decisions," specifically *Rasor* and *Martini*. *Segura*, 184 Wn.2d at 600-602 (McCloud, J. concurring in result only).

[12] RCW 59.20.010.

Our supreme court held that "in the absence of a clear mandate from the Legislature," emotional distress damages were not available for a violation of [the MHLTA] because RCW 59.20.073(5) could be violated by negligent, rather than intentional, conduct. *White River Estates*, 134 Wn.2d at 766-69. In reaching its conclusion, the court noted that the statute was silent regarding what damages were available if the statutory provision at issue was violated. *Id.* at 766. But our supreme court's decision in *Segura* brings *White River Estates* intentional tort approach into question.

In *Segura v. Cabrera*, 179 Wn. App. 630, 635, 637, 319 P.3d 98 (2014), *aff'd*, 184 Wn.2d at 591-94, a two judge majority of Division Three of the Court of Appeals followed the *White River Estates* intentional tort approach to conclude that "actual damages" as used in the Residential Landlord Tenant Act[13] (RLTA) did not include emotional distress damages. But a five-justice majority of our supreme court abandoned the intentional tort approach. *Segura*, 184 Wn.2d at 591-96. Instead, our supreme court resolved the issue as a matter of statutory interpretation by examining the broader statutory language and legislative intent, with a particular focus on the type of interest the statute was intended to protect. *Id.*

Unlike *White River Estates*, the issue here is what types of damages are included in the term "actual damages." Thus, this case is more similar to *Segura*. And, in light of our supreme court's refusal to apply the intentional tort approach under similar circumstances in *Segura*, accordingly, we decline to apply the *White River Estates* intentional tort test and apply the statutory interpretation test described in *Segura* instead.

---

[13] Chapter 59.18 RCW.

5. *Segura* Test

As mentioned above, in *Segura* our supreme court considered whether the term "actual damages" in a provision of the RLTA included emotional distress damages. *Id.* The court held that there is no single definition for the term "actual damages" and that the term "actual damages" can have different meanings depending on context. *Id.* at 595-96. The court held that this ambiguity requires that the reviewing court examine legislative intent to determine the meaning of "actual damages." *Id.* at 594. The court emphasized that the legislative intent must be examined in the specific legislative context with a particular focus on the type of interest the legislation was intended to protect. *Id.*

*Washington Practice* provides a succinct summary of this approach:

Some statutes provide for "actual damages."[14] The Washington Supreme Court has interpreted the statutory phrase "actual damages" in different ways, depending upon the context.[15] The term "actual damages" is sometimes interpreted to mean "compensatory damages," and is distinguished from damages that are nominal, exemplary, or punitive.[16] On the other hand, "actual damages" may mean the measure of pecuniary harm, as distinguished from compensation for other types of harm such as emotional distress.[17] *In interpreting the meaning of "actual damages" in a statute, the court should focus on legislative intent, in particular the*

---

[14] Citing *Segura*, 184 Wn.2d at 596 (addressing damages under RLTA); *Lian v. Stalick*, 106 Wn. App. 811, 25 P.3d 467 (2001) (addressing damages under RLTA); *Martini*, 137 Wn.2d at 367-68 (addressing damages under the WLAD).

[15] Citing *Segura*, 184 Wn.2d at 596.

[16] Citing *Martini*, 137 Wn.2d at 367-68 (addressing WLAD); *Rasor*, 87 Wn.2d at 529 (addressing FCRA).

[17] Citing *Segura*, 184 Wn.2d 587 (emotional distress damages not available for violation of the RLTA); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 318, 322, 858 P.2d 1054 (1993) (personal injury damages not available under the Consumer Protection Act (CPA), chapter 19.86 RCW, and third party emotional distress injuries not available under the Product Liability Act (PLA), chapter 7.72 RCW).

> *type of interest the statute is designed to protect.*[18] For example, [WLAD], which uses the term "actual damages" but also directs that the statute should be liberally construed to effect its purpose, allows the recovery of emotional distress damages as part of the "actual damages" authorized by the statute.[19]

16 WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 6:2 (5th ed. 2021) (emphasis added). As the Washington Practice notes, the focus of our examination should be on legislative intent and, "in particular the type of interest the statute is designed to protect." *Id.*

### 6. LEGISLATIVE INTENT OF IFCA

Beasley argues that under our supreme court's decision in *Segura*, noneconomic damages are available under RCW 48.30.015 because the statute was intended to protect insureds. GEICO argues that Beasley "overstates the purpose of IFCA," and asserts that IFCA was "not necessary to provide an insured recourse," but merely "provided an additional avenue of potential recovery." Br. of Resp't/Cross Appellant at 22. GEICO also asserts that the voters' pamphlet's emphasis on punitive damages and lack of reference to meaning of actual damages supports the conclusion that the legislative intent was to not include noneconomic damages.

Under *Segura*, we must examine the legislative intent of IFCA with particular focus on the type of interest the legislation was intended to protect. 184 Wn.2d at 593-96. Considering IFCA's legislative history, taking into account the referendum measure, we hold that "actual damages" as used in RCW 48.30.015 includes noneconomic damages.

---

[18] Citing *Segura*, 184 Wn.2d at 596.

[19] Citing *Ellingson v. Spokane Mortg. Co.*, 19 Wn. App. 48, 56-58, 573 P.2d 389 (1978) (mental anguish and emotional distress damages available under WLAD).

a. Context of Legislation: Previously Available Claims

Before the enactment and adoption by referendum of IFCA, an insured party could pursue claims against an insurer for (1) breach of contract, (2) the breach of the duty of good faith, and (3) violation of the CPA. Each category of claim allows for specific types of damages.

Breach of contract claims allow for the recovery of the benefits due under the contract plus interest and, under certain circumstances, for the recovery of attorney fees and costs. *Woo v. Fireman's Fund Ins. Co.*, 150 Wn. App. 158, 170-71, 208 P.3d 557 (2009). Breach of contract claims do not generally allow for noneconomic damages or trebling of damages. *See Repin v. State*, 198 Wn. App. 243, 256, 392 P.3d 1174 (2017).

Tort claims for the breach of the duty of good faith, also known as insurance bad faith claims,[20] allow for recovery of expenses; consequential damages; and "general tort damages," including noneconomic damages such as emotional distress caused by the breach of the duty of good faith. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 133, 196 P.3d 664 (2008) (general tort damages); *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 284-85, 961 P.2d 933 (1988) (expenses); *Hamblin v. Castillo Garcia*, 9 Wn. App. 2d 78, 89, 441 P.3d 1283 (2019) (emotional distress); *Singh v. Zurich Am. Ins. Co.*, 5 Wn. App. 2d 739, 759-60, 428 P.3d 1237 (2018) (emotional distress). But insurance bad faith claims do not allow for trebling of damages.

And CPA claims allow "[a]ny person who is injured in his or her business or property by a violation" of various statutes to seek injunctive relief or seek to recover "actual damages

---

[20] *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385, 715 P.2d 1133 (1986) (the duty to act in good faith and liability for bad faith "generally refer[ ] to the same obligation" and these terms are used interchangeably).

sustained by him or her . . . together with the costs of the suit, including a reasonable attorney's fee." RCW 19.86.090. The CPA also permits the trial court to treble the actual damages up to a maximum of $25,000. *Id.* But the CPA damages are limited to injuries to business or property, so the CPA does not allow plaintiffs to seek recovery for personal injuries, whether economic or noneconomic. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 318, 858 P.2d 1054 (1993).

b. IFCA ENACTMENT

In 2007, the legislature passed the legislation enacting IFCA. LAWS OF 2007, ch 498. That same year, the legislation was ratified by referendum. *State of Washington Voters' Pamphlet, General Election* 13-15 (Nov. 6, 2007), https://www.sos.wa.gov/_assets/elections/voters'%20pamphlet%202007.pdf. (Voters' Pamphlet). IFCA permitted plaintiffs to seek relief, including treble damages and attorney fees, for unreasonable denial of a claim for coverage or payment of benefits under an insurance policy and for violation of certain regulations adopted by the Washington State Insurance Commissioner.[21] RCW 48.30.010(7) (prohibiting unreasonable denial of claim for coverage or payment of benefits); RCW 48.30.015(1)-(6)). And the legislative history shows that IFCA was intended to be an independent, but not exclusive, remedy. *See* S.B. 5726 §4 (4), 60th Leg., Reg. Sess. (Wash. 2007); RCW 19.86.090; ENGROSSED SECOND SUBSTITUTE S.B. 5726 H. IFCP Comm. Amd. §§2, 3, 5,

---

[21] Our supreme court has clarified that IFCA does not allow for claims based on violations of certain regulations and that these regulatory violations are only relevant to RCW 48.30.015(2) and (3), which pertain to the trebling provision and the award of reasonable attorney fees and costs. *Perez-Crisantos*, 187 Wn.2d at 683-84.

60th Leg., Reg. Sess., (Wash. 2007); ENGROSSED SECOND SUBSTITUTE S.B. 5726 H. Amd. to IFCP

Comm. Amd. 541, §6.

The Governor signed the bill as passed in the House without comment. The bill was then

submitted for approval by the voter as a referendum measure. Voters' Pamphlet at 13.

c. REFERENDUM MEASURE

The voters' pamphlet for the referendum measure summarized the existing law and the

provisions of the new law and contained statements for and against IFCA. Voters' Pamphlet at 13-

15. The official ballot title stated:

> The legislature passed Engrossed Substitute Senate Bill 5726 (ESSB 5726) concerning insurance fair conduct related to claims for coverage or benefits and the voters have filed a sufficient referendum petition on this bill.

> This bill would make it unlawful for insurers to unreasonably deny certain coverage claims, and permit treble damages plus attorney fees for that and other violations. Some health insurance carriers would be exempt.

*Id.* at 13.

The explanatory statement provided the voters with information about the then-existing

state of the law and the effect of the proposed legislation. It stated a claim based on an unfair denial

of an insurance claim could be pursued on several legal grounds but that IFCA would create a new,

independent legal basis for such a claim and broaden the scope of recovery, in particular by

allowing for punitive damages and the tripling of damages. *Id.* at 14.

The statement in favor of the referendum "emphasize[d] that [the legislation] w[ould]

provide a remedy for, and deter, delay of payment in addition to denial of valid insurance claims,"

stating, in part, that the legislation "would help make the Insurance Industry honor its

22

commitments by making it against the law to unreasonably delay or deny legitimate claims."[22] *Id.* at 15. The statement in favor did not mention the specific types of damages that an insured could seek. *Id.* Instead, the statement focused on the need for legislation that would allow insureds to seek redress for unreasonable denials of claims and discourage the insurance industry from engaging in unreasonable delay or denial of "legitimate claims." *Id.*

The statement against the referendum did not discuss the nature of the damages. Instead, it emphasized IFCA's potential effect on insurance premiums and the number of lawsuits and asserted that this legislation was being promoted by trial lawyers to create "new opportunities to file frivolous lawsuits and collect fat lawyers' fees" at the consumers' expense. *Id.* (emphasis omitted). The referendum passed. *See also November 06, 2007 General Election Results: Referendum Measure 67 Concerns Insurance Fair Conduct Related to Claims for Coverage or Benefits*, WASH. SECRETARY OF ST., https://results.vote.wa.gov/results/20071106/referendum-measure-67-concerns-insurance-fair-conduct-related-to-claims-for-coverage-or-benefits.html (last updated Nov. 29, 2007).

### d. LEGISLATIVE INTENT

To determine the meaning of "actual damages," we must look to legislative intent, with a particular focus on the type of interest the legislation was intended to protect. *Segura*, 184 Wn.2d at 594-96. Although nothing in IFCA's legislative history directly addresses the meaning of "actual damages," the legislative history demonstrates that the legislation was intended to protect the insureds by creating a new remedy for insureds harmed by the unreasonable delay in payment of

---

[22] The Chair of the House Insurance, Financial Services, and Consumer Protection Committee was one of the individuals who prepared the statement in favor of the referendum. Voters' Pamphlet at 15.

valid insurance claims and by encouraging insurers to honor their commitments by making it illegal to unreasonably delay or deny legitimate claims. Voters' Pamphlet at 15. Notably, our supreme court has recognized that "the specific purpose of IFCA was to provide insureds with another legal resource against their insurer for wrongful denials." *Perez-Crisantos*, 187 Wn.2d at 679.

The legislative history also suggests that the legislation was in part intended to serve a punitive purpose because it allows trial courts to treble damages. But a punitive purpose is not inconsistent with a legislative purpose of protecting insureds because the punitive aspects of the legislation also serve as a deterrent purpose that may provide insureds with additional protection.

Additionally, although the trebling provision may suggest that IFCA was at least partially punitive, the fact that the trebling was not mandatory but, rather, at the trial court's discretion, tempers this focus and suggests that punishment was not the primary purpose of the legislation. And the inclusion of a notice and cure period that offered the insurer an opportunity to correct any unreasonable behavior before being hauled into court also suggests that the intent of the legislation was to protect the insured rather than punish the insurer. RCW 48.30.015(8). Overall, these factors weigh in favor of finding that the intent was to protect insureds by providing a new, independent remedy for unreasonable behavior without limiting the type of damages available.[23]

---

[23] One could argue that we also consider that when IFCA was enacted our supreme court had not yet decided *Segura* and the legislature could be deemed to have been aware that *Rasor* and *Martini* appeared to define "actual damages" as including noneconomic damages. But in *Segura*, our supreme court held that *Rasor* and *Martini* did not establish a common definition of "actual damages," and that these cases were instead decided based on the nature of the interest the legislation at issue was designed to protect. 184 Wn.2d at 594-95. We are bound by our supreme court's characterization of the analysis in *Rasor* and *Martini*, so we cannot assume that the legislature construed *Rasor* and *Martini* otherwise.

Furthermore, IFCA can be easily distinguished from the legislation addressed in *Segura*, where our supreme court determined that the legislature did not intend to include noneconomic damages as part of the "actual damages" allowed under the RLTA. 184 Wn.2d at 596. The court's decision in *Segura* was based on (1) the existence of specific statutory language focusing on the return of tenants' funds, and (2) a legislative history of the RLTA that demonstrated that the act was intended to ensure the return of tenants' money rather than to provide for personal redress or to protect tenants against harm. *Id.* at 593-96. Here, in contrast, nothing in IFCA specifies the type of damages envisioned by the legislature or suggests any limitation on damages. And the legislative history discloses that IFCA was intended to provide additional protections and avenues for relief for insureds. Unlike the restrictive statutory language and legislative history in *Segura*, the broad language and legislative purpose here suggests that the legislature intended "actual damages" under IFCA to be interpreted broadly and to include noneconomic damages.

This case can also be distinguished from *Fisons Corp.*, which interpreted the CPA as not permitting recovery of personal noneconomic damages. 122 Wn.2d at 317-18. Unlike here, the legislation at issue in *Fisons* expressly permitted damages only when those damages related to the harm of business or property. *Id.* Here, there are no similar limitations in the relevant legislation.

The legislative history here discloses a purpose more similar to those in *Rasor* and *Martini*, which interpreted "actual damages" as including noneconomic damages. In *Segura*, our supreme court stated that the statutes at issue in *Rasor* and *Martini*, FRCA and WLAD, were both intended to "guard against harm to the person," so "[t]he inclusion of emotional distress damages in in those cases is not surprising, as such provision comports with the purpose and protections afforded by

25

the statutes in question." 184 Wn.2d at 594. Similarly, here, allowing noneconomic damages comports with the purpose of protecting insureds against unfair conduct by insurers.

Accordingly, we hold that because the term "actual damages" as used in IFCA is ambiguous and, as in *Rasor* and *Martini*, the legislative history of IFCA demonstrates that the act was intended to protect insureds and provide additional remedies, "actual damages" includes noneconomic damages and the trial court erred by refusing to so instruct the jury.

C. REMEDY

Beasley argues that because the noneconomic damages for the insurance bad faith claim and the IFCA claim are identical, we should remand only to allow the trial court to determine whether to triple the noneconomic damages awarded in the insurance bad faith claim.[24] Beasley also argues that because the damages for the insurance bad faith and IFCA claims are identical, "GEICO should be collaterally estopped from relitigating the amount of Beasley's [noneconomic] damages." Br. of Appellant/Cross Respondent at 27.

But Beasley cites no authority establishing that noneconomic damages for the insurance bad faith claims and the IFCA claims are identical, and his argument ignores the elements of each type of claim and causation. Although both types of claims rest on an insurer's unreasonable behavior, they are not identical.

---

[24] GEICO also argues that by asking us to hold that the IFCA damages are the same as the insurance bad faith damages, Beasley "is essentially seeking double recovery." Br. of Resp't/Cross Appellant at 14. Beasley contends that he is not seeking double recovery because he is asking only that we remand to allow the trial court to consider whether to treble the insurance bad faith damages. Beasley is correct that he does not seek an award of the same damages awarded under the insurance bad faith claim; he merely seeks remand for the trial court to determine whether those damages can be trebled under IFCA.

Insurance bad faith claims require, among other elements, that the insurer have acted in its own interest over the insured's interest and that the damages be proximately caused by the insurer's bad-faith actions. *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wn.2d 903, 916, 169 P.3d 1 (2007) (damages in an action for insurance bad faith must be proximately caused by breach of duty of good faith); *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 280, 961 P.2d 933 (1998) (insurance bad faith exists when an insurer acts in its own interest above that of the insured). Insurance bad faith claims do not require that the insurer's acts result in unreasonable denial of a claim. *See Coventry*, 136 Wn.2d at 279 (first-party insured has a cause of action for bad faith investigation even where there is ultimately no coverage); *see also St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 131-32, 196 P.3d 664 (2008) (holding that an action for bad faith is not dependent on the duty to indemnify).

In contrast, IFCA claims require that the insurer's unreasonable act or acts result in the unreasonable denial of the insured's claim, and any IFCA damages must be caused by that denial. *W. Beach Condo. v. Commonwealth Ins. Co. of Am.*, 11 Wn. App. 2d 791, 805, 455 P.3d 1193, *review denied*, 195 Wn.2d 1026 (2020). IFCA does not require that the insurer have been acting in its own interest over the insured's interest.

In addition, the trial court in this case gave an unchallenged jury instruction that a finding of bad faith can be based on a violation of the insurance regulations contained in WAC 284-30-330. In contrast, the supreme court held in *Perez-Crisantos* that IFCA does not provide a cause of action for regulatory violations. 187 Wn.2d at 684.

Although some insurance bad faith and IFCA claims could overlap, it is possible that some of an insurer's self-serving actions or violations of insurance regulations may not ultimately result

in the unreasonable denial of a claim and, thus, would establish only an insurance bad faith claim. Because the claims may differ, the damages could also differ. And because the damages under each category of claim are not necessarily the same, we cannot presume that the bad faith damages the jury awarded also were caused by the IFCA violations. Accordingly, we hold that merely tripling the bad faith noneconomic damages is not an appropriate remedy.[25]

Beasley argues that because the bad faith and IFCA damages are identical, GEICO should be estopped from relitigating the amount of noneconomic damages. Because Beasley premises this argument on his assertion that the noneconomic damages for each claim are identical and we hold that the damages are not identical, Beasley's estoppel argument fails.

GEICO argues that "[t]he only appropriate remedy would be to remand for a new trial." Br. of Resp't/Cross Appellant at 13. A new trial on the claims themselves is not appropriate because Beasley does not challenge the verdicts on the substantive claims, and, as discussed below, GEICO's cross-appeal arguments fail. But a new trial on noneconomic damages under IFCA is appropriate because the trial court prevented Beasley from arguing that noneconomic damages were available under the IFCA claim, and the jury was not instructed to determine the noneconomic damages under the IFCA claim.[26]

---

[25] GEICO asserts that the relief requested by Beasley would be an improper reformation of the jury verdict and that Beasley's reliance on *Eagle Point Condo. Owners Ass'n v. Coy*, 102 Wn. App. 697, 9 P.3d 898 (2000) does not support the remedy Beasley requests. Because we reject Beasley's requested relief on other grounds, we do not address whether it would be an improper reformation of the jury verdict.

[26] Washington courts have repeatedly held that duplicative damage awards are void against public policy. *See, e.g.*, *Conrad ex rel. Conrad v. Alderwood Manor*, 119 Wn. App. 275, 290, 78 P.3d 177 (2003) ("a double damage award is contrary to Washington law"); *Eagle Point Condo. Owners Ass'n*, 102 Wn. App. at 702 ("It is a basic principle of damages, both tort and contract, that there shall be no double recovery for the same injury.").

The proper remedy is based on an understanding that although not all bad faith conduct constitutes an IFCA violation, we can presume under the facts of this case that GEICO's IFCA violations also constituted bad faith. The trial court instructed the jury that an IFCA violation required an unreasonable denial of benefits and instructed that "[t]he Court has determined that [GEICO] unreasonably denied the payment of benefits by failing to pay the undisputed $10,000 offer of UIM benefits made on October 23, 2015." CP at 164. An *unreasonable* denial of benefits under the facts of this case necessarily constituted bad faith. *E.g.*, *Robbins v. Mason County Title Ins. Co.*, 195 Wn.2d 618, 633, 462 P.3d 430 (2020) (bad faith exists if a breach of contract is " 'unreasonable, frivolous, or unfounded' ") (internal quotation marks omitted) (quoting *Am Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 412, 229 P.3d 693 (2010)). Further, GEICO's denial of payment of benefits here arguably constituted a violation of WAC 284-30-330(7)– compelling a first party claimant to litigate by offering substantially less than the amount ultimately recovered. Such a violation would constitute bad faith under the court's instructions.

Because a violation of IFCA also would constitute bad faith under the facts of this case, any IFCA noneconomic damages necessarily would have been included in the $400,000 the jury awarded in bad faith damages. But as noted above, the IFCA noneconomic damages may be less than the bad faith damages because the bad faith cause of action is much broader. Therefore, we much remand for a new trial on the issue of IFCA noneconomic damages only.

Once a jury determines the amount of IFCA noneconomic damages, Beasley is not automatically entitled to treble damages. RCW 48.30.015(2) states that the superior court "*may . . . increase the total award of damages to an amount not to exceed three times the actual damages.*" (Emphasis added.) Therefore, after the jury determines the amount of IFCA noneconomic

damages, the trial court in its discretion will decide whether to increase the amount of actual damages.

However, if the trial court increases actual damages, Beasley is not entitled to double recovery. Therefore, Beasley is not entitled to recover the amount the jury awards in IFCA noneconomic damages. That amount is included in the $400,000 in bad faith damages that Beasley already will recover. Instead, Beasley will be entitled to recover only the increased amount the trial court awards.[27]

In addition, Beasley cannot relitigate the $400,000 in bad faith damages the jury awarded in the first trial, which necessarily included IFCA damages. Therefore, Beasley cannot recover any amount above $400,000 in IFCA noneconomic damages and the trial court must disregard any amount the jury awards in IFCA noneconomic damages that exceeds $400,000 in determining the amount (if any) of increased damages.[28]

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Unpublished text follows.

---

[27] For example, if the jury awards $100,000 in IFCA noneconomic damages and the trial court increases that amount to $300,000, Beasley will be entitled to recover only $200,000.

[28] For example, if the jury awards $500,000 in IFCA noneconomic damages, Beasley could not recover the additional $100,000 and the most the trial court could award in increased damages would be $800,000 (three times the $400,000 cap less the $400,000 Beasley already recovered in bad faith damages).

GEICO'S CROSS APPEAL

We next turn to GEICO's cross appeal. In its cross appeal, GEICO argues that (1) Beasley's IFCA claim cannot stand because the claim was premised on a violation of a regulation and such claims are not permitted under *Perez-Cristanos*, (2) "the [trial] court erred in granting [Beasley's] motion for directed verdict/judgment as a matter of law that GEICO violated IFCA by failing to pay the $10,000 offer," and in instructing the jury that the court had determined that GEICO had unreasonably denied payment of benefit by not paying the $10,000 offer, and (3) the trial court erred when it granted Beasley's post-trial motion to treble the IFCA damages. Br. of Resp't/Cross Appellant at 35. These arguments fail.

A. BEASLEY'S RIGHT TO BRING AN IFCA CLAIM

GEICO argues that Beasley's IFCA claim cannot stand because the claim was premised on a violation of a regulation and such claims are not permitted under *Perez-Cristanos*. Beasley does not address this argument. GEICO is correct that an IFCA claim cannot be based on a violation of an insurance regulation. *Perez-Crisantos*, 187 Wn.2d at 672. But that is not what happed here.

In *Perez-Crisantos*, our supreme court addressed whether the appellant could bring an IFCA claim based on the premise that the insurer "compelled him to litigate his UIM claim" by offering him nothing prior to his filing suit and that this was a violation of WAC 284-30-330(7), which prohibited insurers from forcing insured's to "litigate to recover" benefits that they were entitled to by making lowball offers. 187 Wn.2d at 678, 675. Our supreme court held that IFCA did not create "a new and independent private cause of action for violation of [certain insurance] regulations in the absence of any unreasonable denial of coverage or benefits." *Id.* at 672.

But, unlike here, *Perez-Cristanos* addressed a suit premised on an insurer's alleged violation of a WAC that prohibited lowball offers. *Id.* at 675. Here, in contrast, the claim was based on GEICO's failure to pay an undisputed amount, not a violation of the WACs, so GEICO's reliance on *Perez-Cristanos* is inapposite, and GEICO does not demonstrate that there was no legal basis for the IFCA claim.

B. CR 50 MOTION

GEICO further argues that the trial court erred in granting Beasley's CR 50 motion and instructing the jury that GEICO's failure to pay the $10,000 offer was an unreasonable denial of payment of benefits. GEICO asserts that because it presented evidence that the insurance "policy required the parties to agree on the amount," the $10,000 offer was only "a compromise offer that was not accepted and therefore was not due" and, thus, failure to pay this amount could not be a denial of payment.[29] Br. of Resp't/Cross Appellant at 37, 38. This argument fails under the specific facts of this case.

CR 50(a)(1) provides that a trial court may grant a motion for judgment as a matter of law on an issue when "a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue."

> We review de novo a trial court's decision on a motion for judgment as a matter of law on a particular issue under CR 50. Like the trial court, we must determine whether there is any legally sufficient evidentiary basis for a reasonable jury to have found for a party with respect to the issue. CR 50. We view all conflicting evidence in the light most favorable to the nonmoving party, here [GEICO].

---

[29] To the extent GEICO is also citing *Perez-Crisantos* to support this argument, that case has no relationship to whether a failure to pay an unaccepted offer is a refusal to pay for purposes of IFCA.

*HBH v. State*, 197 Wn. App. 77, 85, 387 P.3d 1093 (2017) (case citations omitted), *aff'd*, 192 Wn.2d 154, 429 P.3d 484 (2018).

Although an insurer is not always obligated to pay an offer that is not accepted by the insured, the evidence here clearly shows that GEICO did not dispute that Beasley was entitled to receive the $10,000 before any final settlement. Bork testified that there was no disagreement regarding whether the damages were at least $10,000, and that the $10,000 offer represented a "fair and reasonable . . . settlement offer" and "undisputed UIM benefits." 4 RP at 621. And the evidence here similarly shows that Beasley accepted the $10,000 amount as an undisputed portion of the damages because he demanded payment of that portion of the damages.

GEICO's argument that the insurance policy required the parties to agree on the total amount of damages before any portion of it was due is not supported. The insurance policy provision that GEICO cites to provides, "If you and we do not agree . . . to the proper amount of such damages, the dispute may be resolved: (a) In a binding, voluntary arbitration proceeding as described in paragraph 2 below, or (b) [b]y civil lawsuit brought by you in a court of competent jurisdiction." CP at 29 (boldface omitted). Although this provision provides a mechanism for resolving a dispute over the "proper amount" of damages, it does not say when any *undisputed* portion of the damages may or may not became due.

Importantly, in this case Bork did not dispute that undisputed UIM benefits were "owed." 4 RP at 621. And Murphy agreed that "an insurer should pay the undisputed UIM benefits as soon as possible" and that, although it was not normal practice, there were instances "when undisputed portions of claims are paid prior to the final evaluation and/or settlement." *Id.* at 545, 609. Geico presented no contrary evidence. The evidence presented at trial, even in the light most favorable

to GEICO, supports the trial court's conclusion. Accordingly, we affirm the trial court's CR 50 order.

C. TREBLING

Finally, GEICO contends that the trial court erred in granting Beasley's motion for treble damages under RCW 48.30.015(2). GEICO argues that the decision to award treble damages was based on untenable grounds because the trial court's order refers to testimony that is not in the record. Specifically, GEICO asserts that Murphy "did not testify that he never considers noneconomic damages beyond pain and suffering." Br. of Resp't/Cross Appellant at 40. GEICO asserts that Murphy instead testified that he "considers how the injury affected the insured and those factors which can be monetarily calculated." *Id.* (citing 4 RP 472-73).

RCW 48.30.015(2) provides that the trial court "may" "increase the total award of damages [under the IFCA claim] to an amount not to exceed three times the actual damages," if the court finds "that an insurer has acted unreasonably in denying a claim for coverage or payment of benefits or has violated a rule in [RCW 48.30.015(5)]. We review challenged findings of fact for substantial evidence. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). Substantial evidence is "defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." *Id.*

In its ruling on the treble damages, the trial court stated that it was basing its ruling on the following: "At one point in the trial this court was shocked by the testimony of Mr. Murphy, an adjuster handling the claim, that he did not in this case or ever in any case consider any [noneconomic] damages other than pain and suffering and has never been trained to consider any

other [noneconomic] damages." CP at 269-70. Murphy's testimony provides substantial evidence to support this finding.

As noted above, Murphy testified that pain and suffering were two types of noneconomic damages and that he was trained on how to evaluate pain and suffering claims. Although Murphy initially testified that GEICO trained him on "special" damages, which included anything "outside of the . . . things that can be monetarily defined," he clarified that he was not "to [his] knowledge" trained "on any other elements of noneconomic damages" beyond pain and suffering. 4 RP at 473. And he agreed that during his tenure as a bodily injury adjuster supervisor, he had "never valuated and paid for any noneconomic damages other than pain and suffering." *Id.* at 474. This testimony supports the trial court's finding.

Although Murphy also acknowledged that "loss of enjoyment of life, embarrassment, inconvenience, noneconomic damages, other than pain and suffering," could "sometimes be part of the claim that's being made" and that he was aware of cases in which such damages were awarded, that testimony does not change Murphy's testimony that he was not trained on other types of noneconomic damages and that he had "never valuated and paid for any economic damages other than pain and suffering." *Id.* at 474, 475-76. Because Murphy's testimony provides substantial evidence in support of the trial court's finding, GEICO fails to show that the trial court erred in granting Beasley's request for treble damages.

ATTORNEY FEES

Beasley requests reasonable attorney fees and costs on appeal under RAP 18.1(b) and RCW 48.30.015(3). Beasley also requests reasonable attorney fees and costs under IFCA for responding to GEICO's cross appeal. GEICO argues that Beasley should not be awarded attorney fees under

IFCA because Beasley has not prevailed on his IFCA claim. GEICO does not argue that it is entitled to attorney fees.

Because we grant relief under Beasley's appeal and reject GEICO's cross appeal arguments, we grant Beasley's request for reasonable attorney fees and costs.

CONCLUSION AND REMAND INSTRUCTIONS

We hold that noneconomic damages are available under IFCA and reverse the trial court's rulings related to this issue and remand for a new hearing on noneconomic damages and reject GEICO's cross appeal arguments. Following a jury verdict on noneconomic IFCA damages, the trial court must engage in further proceedings consistent with the direction in this opinion.

CRUSER, A.C.J.

We concur:

MAXA, J.

LEE, J.